FILED

2022 Jul-11  AM 08:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

**SHAWANDA MICHELLE ELLIS,**

       Plaintiff,

**v.**

**KILOLO KIJIKAZI,**
**Acting Commissioner**
**of the Social Security**
**Administration,**

       Defendant.

**Case No. 4:20-cv-1420-CLM**

## MEMORANDUM OPINION

Shawanda Michelle Ellis seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Ellis's application in an opinion written by an Administrative Law Judge ("ALJ").

Ellis argues: (1) that the ALJ erred in holding that her daily activities diminish the persuasiveness of her allegations; (2) that the ALJ erred in evaluating the opinions of Dr. Dallas Russell, a consultative examiner; and (3) that the hypothetical question posed to the vocational expert was deficient.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports her decision. So the court will **AFFIRM** the SSA's denial of benefits.

I.   STATEMENT OF THE CASE

A.   Ellis's Disability, as told to the ALJ

Ellis was 47 years old at the time of the ALJ's decision. (R. 12, 183). Ellis completed some college courses and got licensed as a cosmetologist. (R. 46). And Ellis has past relevant work as a hairstylist. (R. 67, 32).

In her disability report, Ellis alleged that she suffers from knee problems, carpal tunnel, asthma, COPD, thyroid/graves disease, arthritis, high blood pressure, and ADD (R. 209). At the ALJ hearing, Ellis testified that her main problem is back and knee pain. (R. 47). According to Ellis, her back often flares up and generates pain that runs from her lower back down to her left hip and leg. (R. 47–48). Her knee pain caused her to undergo two surgeries on her right knee. (R. 51–52). Ellis also testified that she suffers from carpal tunnel in both hands, which causes pain that radiates through her arms. (R. 50). And Ellis has shoulder pain that keeps her awake at night. (*Id.*).

Ellis's carpal tunnel prevents her from opening a jar of pickles, cutting things with a knife, or holding a fork to eat. (R. 50–51). Ellis can also only stand for around 15 to 20 minutes at a time. (R. 52). And "[w]alking is really a problem for [Ellis]." (*Id.*). So she can only walk for 8 to 10 minutes at a time before having to sit down. (R. 53).

Ellis spends most days at home. (R. 56). On a typical day, Ellis watches TV, cleans up a little, and does a little bit of laundry. (*Id.*). Ellis doesn't "visit much" and rarely has any visitors. (R. 56– 57). When Ellis goes shopping, she's in and out because she gets stiff and can barely walk. (R. 53).

B.   Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C.   Ellis's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Ellis applied for disability insurance benefits, a period of disability, and SSI in April 2018, claiming that she could not work because of various ailments, including knee problems, carpal tunnel, asthma, COPD, thyroid/graves disease, arthritis, high blood pressure, and ADD. After receiving an initial denial in October 2018, Ellis requested a hearing, which the ALJ conducted in November 2019. The ALJ ultimately issued an opinion denying Ellis's claims in March 2020. (R. 15–35).

At Step 1, the ALJ determined that Ellis was not engaged in substantial gainful activity and thus her claims would progress to Step 2. (R. 18).

At Step 2, the ALJ determined that Ellis suffered from the following severe impairments: obesity; right knee meniscal tears, osteoarthritis, and patellofemoral chondromalacia status post right knee arthroscopy; carpal tunnel syndrome; cervical and lumbar spondylosis; right shoulder osteoarthritis; major depressive disorder; and attention-deficit hyperactivity disorder. (R. 18–19).

At Step 3, the ALJ found that none of Ellis's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (R. 19–23). So the ALJ next had to determine Ellis's residual functional capacity.

The ALJ determined that Ellis had the residual functional capacity to perform sedentary work with these added limitations:

- Ellis can occasionally push and/or pull, as well as operate foot controls with the right lower extremity.

- Ellis can occasionally climb ramps and stairs.

- Ellis can never climb ladders, ropes, or scaffolds.

- Ellis can occasionally balance, stoop, kneel, crouch, and crawl.

- Ellis can frequently handle, finger, and feel with bilateral upper extremities.

- Ellis can occasionally reach overhead with the right upper extremity.

- Ellis can have occasional exposure to temperature extremes and wetness and humidity.

- Ellis can have no exposure to unprotected heights or hazardous machinery.

- Ellis is limited to understanding, remembering, and carrying out simple instructions.

- Ellis can have no more than occasional contact with the general public.

- Ellis needs changes in the work environment to be gradually and infrequently introduced.

(R. 23–31).

At Step 4, the ALJ found that Ellis could not perform her past relevant work. (R. 32–33). At Step 5, the ALJ determined that Ellis could perform jobs, such as addresser and document preparer, that exist in significant numbers in the national economy and thus Ellis was not disabled under the Social Security Act. (R. 33–34).

Ellis requested an Appeals Council review of the ALJ's decision. (R. 1–5). The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to

review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.   STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   LEGAL ANALYSIS

Ellis makes three arguments for why the ALJ erred. First, Ellis argues that the ALJ erred in evaluating her daily life activities. Second, Ellis asserts that the ALJ failed to afford proper weight to the opinion of Dr. Dallas Russell, a consultative examiner. Finally, Ellis contends that the ALJ's decision isn't supported by substantial evidence. The court will address each argument in turn.

### A.   Daily Life Activities

Ellis first argues that the ALJ improperly found that evidence of her daily activities diminished the persuasiveness of her allegations. A claimant's admission that she participates in daily activities for short durations does not disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), but it is appropriate for an ALJ to consider daily activities relevant to a claimant's subjective pain allegations. *See* 20 CFR § 404.1529(c)(3). And this court "will not disturb a clearly articulated credibility finding supported by substantial

evidence." *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

A reasonable person could agree that Ellis's daily activities discredited her subjective pain testimony. As recounted in the ALJ's hearing decision, Ellis testified at the ALJ hearing that she suffers from depression, crying spells, and sleep disturbance caused by pain. (R. 24). Ellis also rated her back pain an 8/10 and her knee pain an 8 to 9/10 on the pain scale. (*Id.*). And Ellis reported that she can stand for only 15 to 20 minutes at a time and walk for only 8 to 10 minutes before needing to rest. (*Id.*). But Ellis also testified that she can watch television, do laundry, and leave home to shop in stores. And Ellis reported to the State agency that she can perform light household chores, cook, shop for between 30 and 60 minutes, and manage her finances. (R. 79). Plus, Dr. Kline, the consultative psychologist, noted that Ellis attended church; talked with neighbors, family, and friends; and got along well with other people. (R. 437). As the ALJ determined, that Ellis could perform these activities is "directly contradictory to [Ellis's] allegation that she is unable to work in any capacity." (R. 29). So the ALJ didn't err in pointing to these activities as one of several factors that supported her decision to discredit Ellis's testimony.

### B.    Dr. Russell's Opinion Evidence

Ellis next asserts that the ALJ didn't adequately assess the opinion evidence of Dallas M. Russell a consultative examiner. After examining Ellis, Dr. Russell found that she had normal fine motor skills, handling, fingering, and gripping. (R. 444). But Ellis's feeling was abnormal. (*Id.*). Ellis's overhead and forward reaching with her right shoulder was also abnormal. (*Id.*). Ellis's vision/hearing/speech were unremarkable. (*Id.*). Though Dr. Russell determined that Ellis would be sensitive to environmental exposures like heat/cold/humidity/noise/vibration. (*Id.*). And Ellis would have trouble carrying/lifting because of her shoulder and knee. (*Id.*). Ellis's shoulder would also cause her difficulty with pushing and pulling. (*Id.*). And though Ellis had difficulty standing and walking,

there was no difficulty with sitting. (*Id.*). Finally, Dr. Russell determined that Ellis's right knee gave her trouble with climbing, stooping, bending, crawling, kneeling, and crouching. (*Id.*).

Ellis makes four arguments related to the ALJ's handling of Dr. Russell's medical opinion.

1. <u>'Some measure of clarity' lacking</u>: Ellis first argues that the ALJ failed to provide "some measure of clarity" for why she discounted Dr. Russell's opinions. In support of this argument, Ellis cites the rule that an ALJ "must state with particularity the weight given to different medical opinions and the reason therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). That was the rule under the old regulations. Under the new regulations, the ALJ must still articulate how persuasive she finds each medical source's opinion. *See* 20 CFR §§ 404.1520c(b), 416.920c(b). But the ALJ doesn't need to assign the medical opinions a specific evidentiary weight. 20 CFR §§ 404.1520c(a), 416.920c(a). Instead, the ALJ just needs to explain how she considered the factors of supportability and consistency when evaluating a medical source's opinion. 20 CFR §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ explained that she found Dr. Russell's opinion somewhat persuasive because it was supported by his examination findings. (R. 31). The ALJ also found Dr. Russell's opinion consistent with the other record evidence, including MRI findings of the lumbar and cervical spine. (*Id.*). But the ALJ noted that Dr. Russell didn't provide a statement about what Ellis can do despite her impairments (*i.e.*, Dr. Russell didn't make a residual functional capacity assessment). (*Id.*). This discussion of Dr. Russell's findings adequately explained the ALJ's reasons for finding Dr. Russell's opinion somewhat persuasive.

2. <u>ALJ substituted judgment</u>: Ellis next asserts that the ALJ improperly substituted her judgment for the judgment of Dr. Russell. "The ALJ may not make medical findings herself." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016). But it is an ALJ's responsibility to determine a claimant's residual functional capacity

based on all the evidence. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 488 (11th Cir. 2012). Here, the ALJ did not take on the role of a physician. Instead, the ALJ appropriately considered Dr. Russell's opinion given the other record evidence and explained why she found the opinion somewhat persuasive. So Ellis's argument that the ALJ improperly substituted her judgment for the judgment of Dr. Russell fails.

3. <u>'Degree of suspicion' standard should apply</u>: Citing *Wilder v. Chater*, 64 F.3d 335, 227 (7th Cir. 1995), Ellis next asks the court to apply 'a degree of suspicion' to the ALJ's decision to find Dr. Russell's opinion somewhat persuasive.

The court declines to apply the 'degree of suspicion' standard to the ALJ's assessment of Dr. Russell's medical opinion for two reasons. First, the Eleventh Circuit has not adopted the 'degree of suspicion' standard. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019). Second, even if *Wilder* controlled, *Wilder* is distinguishable from the facts here. In *Wilder*, the consultative examiner's opinion contained the only medical evidence of the claimant's mental impairments. *See Wilder*, 64 F.3d at 337–38. But here the record includes other opinions and evidence on Ellis's physical impairments. So—even if the Eleventh Circuit adopted *Wilder*'s analysis—*Wilder* does not apply to these facts.

4. <u>No good cause</u>: Ellis's fourth argument is that the ALJ erred because she lacked good cause to do anything but fully accept Dr. Russell's opinion. She also states, without elaboration, that the ALJ erred because her medical treatment records support Dr. Russell's opinion.

This argument fails for three reasons. First, because Dr. Russell was a one-time consultative examiner, his opinion isn't entitled to any deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). So the ALJ didn't need good cause to reject his opinion.[1]

---

[1] Even if Dr. Russell were Ellis's treating physician, the SSA's regulations for claims filed after March 27, 2017 would apply. And under these regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 CFR § 404.1520c(a).

Second, Ellis hasn't explained which specific treatment records support Dr. Russell's opinion or why the ALJ lacked good cause to find his opinion only somewhat persuasive. So Ellis has inadequately briefed this issue. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Third, the ALJ didn't completely discount Dr. Russell's opinion. In fact, the ALJ stated that she was somewhat persuaded by Dr. Russell's opinion and noted that both his examination findings and objective imaging of Ellis's spine supported the opinion. (R. 31). The ALJ then considered these findings in fashioning Ellis's residual functional capacity. (*Id.*). And the ALJ incorporated many limitations that Dr. Russell noted in her residual functional capacity assessment. For example, consistent with Dr. Russell's opinion, the ALJ limited Ellis to occasionally reaching overhead with the right upper extremity. The ALJ also limited Ellis to only occasional exposure to environmental hazards, such as extreme temperatures, wetness, and humidity. Ellis hasn't argued, much less shown, that Dr. Russell's opinion required the ALJ to more severely restrict her ability to perform work activities. So Ellis hasn't established that the ALJ erred.

\* \* \*

In sum, none of Ellis's arguments persuades the court that the ALJ erred in evaluating Dr. Russell's opinion evidence.

## C.   Substantial Evidence

Ellis finally contends that substantial evidence doesn't support the ALJ's decision to deny benefits because the ALJ relied on a vocational expert's answer to a hypothetical question that didn't accurately state her pain level or residual functional capacity.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all

of the claimant's impairments." *Winschel*, 631 F.3d at 1180. But if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in his hypothetical question to the vocational expert. *See Crawford*, 363 F.3d at 1161.

Ellis asserts that the ALJ's hypothetical is deficient because it assumed Ellis could perform sedentary work and "[t]here is no medical evidence that claimant can work." (Doc. 12 at 34). But the ALJ pointed to substantial medical evidence in the record that supported her determination that Ellis wasn't disabled. (R. 28–29). And the ALJ explained how Ellis's various impairments corresponded with her residual functional capacity findings. (R. 29–30). For example, the ALJ determined that because of Ellis's knee pain and decreased range of motion she couldn't climb ladders, ropes, or scaffolds. (R. 29). The ALJ also explained that Ellis's carpal tunnel syndrome means she can only frequently handle, finger, and feel with her bilateral upper extremities. (*Id.*).

Plus, the ALJ accounted for Ellis's moderate limitations in the four areas of mental functioning by (1) limiting her to understanding, remembering, and carrying out simple instructions; (2) providing Ellis with only occasional contact with the general public; and (3) requiring Ellis's changes in the work environment to be gradually and infrequently introduced. (R. 29–30). So this case isn't like the cases that Ellis cites where the hypothetical question didn't even implicitly account for the claimant's moderate mental functioning limitations. *See, e.g.*, *Winschel*, 631 F.3d at 1181. Instead, as shown above, the limitations given in the ALJ's hypothetical question adequately addressed Ellis's mental impairments. *See Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 713 (11th Cir. 2015) (finding hypothetical question sufficient because "the ALJ accounted for . . . moderate limitations in concentration, persistence, or pace by limiting [the claimant] to simple, routine, and repetitive tasks, which medical evidence showed he could perform."). In short, the court sees no error in the ALJ's hypothetical question to the vocational expert.

## IV.   CONCLUSION

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on July 11, 2022.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE